Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ERIK SALAIZ, individually, and on behalf of all others similarly situated, | § § § | Civil Action No.:  3:24-cv-396 |
| Plaintiff, | § § | **CLASS ACTION COMPLAINT** |
| v. | § § | **AND DEMAND FOR JURY TRIAL** |
| SUMMIT LAW PARTNERS PC, a California Professional Corporation and JEFFREY C. BOGERT, an individual, | § § § § | |
| Defendants. | § | |

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against Defendant SUMMIT LAW PARTNERS PC ("Summit") and Defendant JEFFREY C. BOGERT ("BOGERT" or together, "Defendants") to stop their illegal practice of placing illegal telemarketing calls to the telephones of consumers whose phone numbers were registered on the Federal Do Not Call Registry, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

1.      Mr. Bogert operates Defendant Summit. As a part of Summit's marketing, Mr. Bogert placed thousands of illegal robocalls through its telemarketing company, Debt Registration Center, ("DRC") to consumers whose phone numbers were registered on the Federal Do Not Call Registry.

2.      Defendants did not obtain consent prior to sending these unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.      Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4.      The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5.      The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6.      By placing robocalls to people who have registered their phone numbers on the national do-not call database, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

7.      Plaintiff therefore seeks an injunction requiring Defendants to stop its illegal calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8.      Plaintiff Erik Salaiz is a natural person residing in El Paso, Texas.

9.      Defendant Summit Law Partners PC is a company organized and existing under the laws of California.

10.      Defendant Jeffrey C. Bogert is an individual residing in Santa Ana, California.

11.     Unnamed Party Debt Registration Center ("DRC") is an unidentified telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant Bogert.

## JURISDICTION AND VENUE

12.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13.     This Court has specific personal jurisdiction over Defendants because Defendants caused the violating calls to be sent to Plaintiff in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

15.     Defendant Summit is a law firm in Santa Ana, California.

16.     Defendant Bogert owns and manages Defendant Summit.

17.     Defendant Bogert hired DRC to send out calls with an artificial or prerecorded voice message soliciting Plaintiff and the putative class for Defendant Summit's legal representation.

18.     Defendants Summit and Bogert failed to obtain consent from recipients, nor did they check the Do Not Call registry.

## PLAINTIFF'S FACTUAL ALLEGATIONS

19.     Plaintiff registered his personal cell phone ending in 5210 on the National Do Not Call Registry since June 1, 2021.

20.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

21.    Plaintiff's telephone number 5210 is a residential number and is registered to a cellular telephone service.

22.    Plaintiff's telephone number 5210 is not used for commercial purposes.

23.    Plaintiff uses telephone number 5210 for personal calls.

24.    Defendant Summit offers legal representation for debt relief services to consumers.

25.    Defendant Bogert provides DRC with calling lists to thousands of consumers' residential phone numbers.

26.    Defendant Bogert instructs DRC to call the phone numbers on calling lists he provides.

27.    Defendant Bogert instructs DRC to use an artificial or prerecorded voice message when making these telemarketing calls.

28.    Defendant Bogert provides DRC with qualifications a consumer must meet to qualify for Summit's debt relief services to use when placing calls.

29.    Defendant Summit pays DRC a commission fee for every new client they retain for Defendant Summit.

30.    Summit has generated substantial profits by violating the TCPA and generating new clients through illegal telemarketing.

31.    **Call #1 –** On July 15, 2024, at 10:05 AM, Plaintiff received the first call to his personal phone 5210 from DRC from phone number (989) 312-6644.

32.    **Call #2 –** On July 15, 2024, at 11:11 AM, Plaintiff received the second call to his personal phone 5210 from DRC from phone number (442) 223-2753.

33.    Both calls generated the same voicemail that contained an artificial or prerecorded voice message that stated:

"Hey, this is Stacy with the financial support group. I'm giving you a follow up call on your request regarding our financial hardship program. I'm pleased to let you know that I was able to get you an approval today that I think you're really going to like. Please give me a call back at 310-694-0571 so we can finalize the details before your offer expires any of my team members can assist you, so feel free to talk to anyone. Again. My number is 310-694-0571. I look forward to speaking with you soon. Thanks."

4

34.     The alleged calls were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played.

35.     The artificial or prerecorded voice message does not identify DRC or Defendant Summit.

36.     On the same day July 15, 2024, Plaintiff called (310) 694-0571 the phone number left in the voicemails in order to identify who was behind these illegal robocalls.

37.     Plaintiff was connected to an agent with DRC named Alexcis Brereton.

38.     Alexcis stated to Plaintiff they were reaching out to Plaintiff in regard to a hardship relief program.

39.     Alexcis asked Plaintiff a series of qualifying questions regarding Plaintiff's unsecured debt and advised Plaintiff he was approved for their program.

40.     Alexcis solicited Plaintiff for a debt relief program on behalf of Defendant Summit.

41.     Alexcis advised Plaintiff the cost would be $725.15 per month for 36 months.

42.     Plaintiff received an email from Alexcis while on the call from email info@slplawoffices.com that contained a legal service agreement from Defendant Summit for Plaintiff to sign. *See Exhibit A.*

43.     DRC has access to Defendant Summit's back office that allows DRC to send emails to new clients on behalf of Defendant Summit.

44.     The legal service agreement attached in the email Plaintiff received from Alexcis displays Defendant Summit would be representing Plaintiff for debt relief services. *See Exhibit B.*

45.     Plaintiff did not give his prior express written consent to receive any of the alleged calls.

46.     None of the alleged calls were made to Plaintiff for emergency purposes.

47.     The calls were made to Plaintiff for the purpose of encouraging Defendant Summit's legal representation.

5

48.     Defendants refuse to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendants financially.

49.     Defendants are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations either directly or through its telemarketer DRC. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain either Defendants Summit or Bogert's registration.

50.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## CLASS ALLEGATIONS

51.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendant called (3) whose telephone numbers were registered on the Federal Do Not Call registry or who received an artificial or prerecorded voice message.

> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant called (3) whose telephone numbers were registered on the Federal Do Not Call registry or who received an artificial or prerecorded voice message.

52.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

6

Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant placed phone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

54.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

55.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

56.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

57.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

  a. Whether Defendants placed calls using an artificial or prerecorded voice;

  b. Whether Defendants checked the phone numbers to be called against the Federal Do Not Call registry;

  c. Whether Defendants obtained written express consent;

  d. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

  58. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

  //

  //

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**

59.     Mr. Salaiz realleges paragraphs one through one hundred and four and incorporates them herein as if set forth here in full.

60.     DRC placed unsolicited phone calls to Mr. Salaiz's and the Class members' cellular and/or residential telephones on behalf of Defendants without having their prior express written consent to do so.

61.     The calls were made for the express purpose of soliciting customers for Defendant Summit's services.

62.     When Mr. Salaiz and the Class answered and/or played their voicemails, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

63.     As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

64.     Defendants made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

65.     If the court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

        //

        //

**Second Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**

66.     Mr. Salaiz realleges paragraphs one through one hundred and eleven and incorporates them herein as if set forth here in full.

67.     The telephone numbers of Mr. Salaiz and the Class are registered on the Do Not Call Registry.

68.     DRC placed unsolicited phone calls to Mr. Salaiz's and the Class members' DNC registered telephones without having their prior written consent to do so.

69.     Defendants' actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

70.     Defendants' phone calls were made for the commercial purpose of soliciting Defendant Summit's goods and services.

71.     As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages.

72.     Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

73.     Mr. Salaiz also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

//

//

**Third Cause of Action:**
**Violations of The Texas Business and Commerce Code § 305.053**
**(On Behalf of Plaintiff and the Texas Subclass)**

74.    Mr. Salaiz realleges paragraphs one through one hundred and nineteen and incorporates them herein as if set forth here in full.

75.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

76.    The foregoing acts and omissions of Defendants' telemarketers constitute multiple violations of the Texas Business and Commerce Code § 305.053, by making non-emergency telemarketing calls to Mr. Salaiz's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 *et seq*. The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an artificial or prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

77.    Mr. Salaiz sent a notice of violation and request for remedy to Defendants under Texas Business and Commercial Code § 17.505(a).

78.    Mr. Salaiz seeks $500.00 in damages for each such violation on behalf of himself and those similarly situated. Texas Business and Commerce Code § 305.053(b)

79.    Mr. Salaiz seeks an award of up to $1,500.00 in damages for each such knowing or willful violation on behalf of himself and those similarly situated. Texas Business and Commerce Code § 305.053(c).

80.    As a result of the Defendants violations of § 305.053, Mr. Salaiz seeks damages, attorneys fees and costs.

//

//

11

//

//

//

**Fourth Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**

81.     Mr. Salaiz realleges and incorporates them herein as if set forth here in full.

82.     Defendants' illegal solicitation sales calls to Mr. Salaiz and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code § 302.101.

83.     The actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls through Jane/John Doe to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

84.     A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

85.     Mr. Salaiz sent a notice of violation and request for remedy to Defendants under Texas Business and Commercial Code § 17.505(a).

86.     As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Mr. Salaiz seeks damages of up to $5,000.00 for each violation on behalf of himself and all those similarly situated. Texas Business and Commerce Code § 302.302(a).

87.     As a result of the Defendants violations of § 302.101, Mr. Salaiz seeks damages, attorneys fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff ERIK SALAIZ, individually and on behalf of the Class, prays for the following relief:

12

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.  An order declaring that Defendants' actions, as set out above, violate 227(b) of the TCPA;

C.  An order declaring that Defendants' actions, as set out above, violate 227(c) of the TCPA;

D.  An order declaring that Defendants' actions, as set out above, violate § 305.053 of the Texas Business and Commerce code;

E.  An order declaring that Defendants actions, as set out above, violate § 302.101 of the Texas Business and Commerce code;

F.  An order declaring that Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

G.  An award of $1,500 per call in statutory damages arising for each intentional TCPA violation;

H.  An award of $1,500 in statutory damages arising from the Texas Business and Commerce code 305.053 for each intentional violation;

I.  An award of $5,000 in statutory damages arising from the Texas Business and Commerce code 302.101 for each intentional violation;

J.  An injunction requiring Defendants to cease all unlawful calls;

K.  An award of reasonable attorneys' fees and costs; and

L.  Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 25, 2024,       Respectfully submitted,

By:  /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*